O

```
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE SOUTHERN DISTRICT OF TEXAS
                         HOUSTON DIVISION


DORCEAL DUCKENS,                §
                                §
          Plaintiff,            §
                                §
v.                              §    CIVIL ACTION NO. H-04-345
                                §
BRAKE CHECK, INC.,              §
                                §
          Defendant.            §
```

MEMORANDUM AND ORDER

Pending is Defendant Brake Check, Inc.'s Motion for Summary Judgment (Document No. 28). After carefully considering the motion, response, reply, and the applicable law, the Court concludes that the motion should be granted in part.

I.  Background

Plaintiff Dorceal Duckens ("Duckens"), who is black, alleges that his former employer, Defendant Brake Check, Inc. ("Brake Check"), denied him compensatory bonuses because of his race and age, in violation Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 1981, the Age Discrimination in Employment Act ("ADEA"), the Fourteenth Amendment to the United States Constitution, and the Texas Commission on Human Rights Act

("TCHRA").[1]  In addition, Duckens asserts state law claims for negligent hiring, training, supervision, and retention.  Brake Check contends that Duckens received all bonuses to which he was entitled under Brake Check's policies.

Brake Check operates a number of automotive repair stores in Houston, Texas.  In July, 2001, Brake Check hired Duckens, who was about 52 years old at the time, to serve as a Manager Trainee at a compensation rate of $425 per week.  *See* Document No. 28 ex. A, at 7; ex. E ¶ 4.  In September, 2001, Brake Check promoted Duckens to the position of Store Director at Store 536 in Bellaire.  *See* id. ex. E ¶ 6.  Under Brake Check's performance-based compensation policy, Store Directors receive a base pay of approximately $370 per week, plus a "bonus" percentage of their Store's net profits that exceed certain preset goals within a particular time period.  *See* id. ex. C ¶ 4.[2]  In addition, Store Directors are eligible for several incentive-based safety and budget achievement bonuses.  *See* id. ¶¶ 5-6.

---

[1] Defendant contends that Plaintiff's actual employer was not Brake Check, Inc., but rather The Peveto Companies, Ltd. d/b/a Brake Check.  However, Defendant does not move for a substitution.

[2] Brake Check divides its financial records into 13 four-week "periods."  *See* Document No. 28 ex. C ¶ 7.  If a store's "period margin" (i.e., net profit) exceeds $6,001 in a given period, the Store Director receives 2% of the profit.  *See* id. ¶ 4; ex. C-2. With each $1,500 increase in the period margin, the Store Director's percentage of the profit also increases.  *See* id. For example, if the period margin exceeds $7,501, the Store Director receives 3% of the profit.  *See* id.

Notwithstanding the $370 base pay generally provided to Store Directors, those Store Directors who are just starting off with Brake Check sometimes negotiate a temporary, supplemental pay plan to provide a support cushion while they develop their assigned stores' profitability.  *See* id. ¶ 10.  Under this plan "Brake Check agrees to supplement the new Store Director's base pay if he does not earn sufficient performance bonuses to bring his compensation up to the negotiated minimum."  Id.  Generally such plans last no longer than six months, after which the Store Director must "sink or swim" under the normal pay plan.  *See* id.

Duckens, who states that he received a salary of approximately $500 per week, complains that: (1) while serving as Store Director of Store 536 in 2001, his bonuses were included in his base salary rather than treated as additional income; (2) after his transfer to Store 534 in March, 2002, Brake Check denied him a bonus that was paid to Harry Lill ("Lill"), a younger white male who also worked at Store 534; (3) Mark Johnson ("Johnson"), a younger white male who was transferred to Store 534 to replace Lill, was also paid a bonus while Duckens was not; and (4) after Duckens was transferred back to Store 536 around August, 2002, he was again denied bonuses "that his younger, Caucasian counterparts received."  *See* Document No. 1, at 2-3.  According to Duckens, these actions involved age and race discrimination/retaliation in violation of federal and

state law.[3]   Brake Check now moves for summary judgment on Duckens's claims.

## II. Summary Judgment Standard of Review

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  The moving party must "demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986).

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted.  Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998).  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice.  Id.  "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."  Id.

---

[3] In November, 2002, Duckens was discharged, but his discharge is not at issue in this case.

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. <u>Kelley v. Price-Macemon, Inc.</u>, 992 F.2d 1408, 1413 (5th Cir. 1993) (citing <u>Matsushita</u>, 106 S. Ct. at 1351). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." <u>Id.</u> Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." <u>Anderson</u>, 106 S. Ct. at 2513.

### III.  <u>Discussion</u>

A.  <u>Title VII, § 1981, ADEA, TCHRA</u>

1.  <u>Discrimination</u>

Title VII proscribes an employer from discriminating against an individual because of that individual's race. 42 U.S.C. § 2000e-2(a)(1). "Section 1981 is a parallel remedy against

5

discrimination which may derive its legal principles from Title VII." Blum v. Gulf Oil Corp., 597 F.2d 936, 938 (5th Cir. 1979); *see* 42 U.S.C. § 1981.  The ADEA similarly prohibits employment discrimination based on age, while TCHRA proscribes both race and age discrimination, so as to correlate Texas employment law with federal discrimination law.  *See* 29 U.S.C. § 623(a)(1); TEX. LAB. CODE ANN. §§ 21.001, 21.051 (Vernon 1996); Machinchick v. PB Power, Inc., 398 F.3d 345, 356 (5th Cir. 2005); Wal-Mart Stores, Inc. v. Canchola, 121 S.W.3d 735, 739 (Tex. 2003).

Where, as here, the same facts underlie the foregoing causes of action, the plaintiff's claims are analyzed conjunctively. *See* Roberson v. Alltel Info. Servs., 373 F.3d 647, 651 (5th Cir. 2004); Canchola, 121 S.W.3d at 739 ("In discrimination cases that have not been fully tried on the merits, we apply the burden-shifting analysis established by the United States Supreme Court.").  The ultimate inquiry is "whether the defendant intentionally discriminated against the plaintiff." Roberson, 373 F.3d at 651.  Intentional discrimination can be established through either direct or circumstantial evidence. Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 219 (5th Cir. 2001).  Because Duckens presents no direct evidence of discrimination, his claim must be analyzed using the framework set forth in McDonnell Douglas Corp. v. Green, 93 S. Ct. 1817 (1973), as applied by Rachid v. Jack in the Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004).  Under this

framework, a plaintiff must first create a presumption of intentional discrimination by establishing, by a preponderance of the evidence, a prima facie case of discrimination. <u>Wallace</u>, 271 F.3d at 219.

The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 120 S. Ct. 2097, 2106 (2000). The burden on the employer at this stage "is one of production, not persuasion; it 'can involve no credibility assessment.'" <u>Id.</u> (quoting <u>St. Mary's Honor Ctr. v. Hicks</u>, 113 S. Ct. 2742, 2748 (1993)). If the employer sustains its burden, the prima facie case is dissolved, and the burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) the employer's reason, while true, is not the only reason for its conduct, and another "motivating factor" is the plaintiff's protected characteristic (mixed-motive alternative). <u>Rachid</u>, 376 F.3d at 312. If the plaintiff "demonstrates that [his protected characteristic] was a motivating factor in the [employer's decision to terminate him], it then falls to the [employer] to prove 'that the same adverse employment decision would have been made regardless of discriminatory animus.'" <u>Id.</u> (quoting <u>Mooney v. Aramco Servs. Co.</u>, 54 F.3d 1207, 1217 (5th Cir.

1995)).  If the employer fails to carry this burden, the plaintiff prevails.  Id.

To establish a prima facie case of discrimination, a plaintiff must show that he was (1) a member of a protected class; (2) qualified for the position held; (3) subjected to an adverse employment action; and (4) treated differently from others similarly situated.  *See* Abarca v. Metro. Transit Auth., 404 F.3d 938, 941 (5th Cir. 2005).  With claims of age discrimination, however, a plaintiff can establish the fourth element of his prima facie case by showing that he was either (i) replaced by someone outside the protected class, (ii) replaced by someone younger, or (iii) otherwise sustained an adverse employment action because of his age.  *See* Machinchick, 398 F.3d at 350.  Brake Check contends that Duckens has no evidence that he suffered an adverse employment action, or that other employees similarly situated were treated more favorably.

Duckens shows in the summary judgment evidence that when he was transferred to Store 534 in March, 2002, Brake Check demoted him from Store Director to Manager, and he remained a Manager until he was discharged in November, 2002.  *See* id. ex. E-5.  He was not told at the time of his reduced job status.  The change apparently did not reduce Duckens's pay of $500 per week, but it did render Duckens ineligible for various bonuses available to Store Directors.  *See* id. ex. C ¶ 15.  Accordingly, Duckens has at least

raised a genuine issue of material fact on whether he sustained an adverse employment action. *See* Pegram v. Honeywell, Inc., 361 F.3d 272, 284 n.12 (5th Cir. 2004) ("[E]ither a cut in a salesman's base pay not otherwise offset upon transfer, or a not-otherwise-offset cut in the commission rate where a commission is a significant source of compensation, would be an adverse action.").[4] Likewise, Duckens has raised a genuine issue of material fact on whether he was treated differently from a similarly situated employee in nearly identical circumstances, namely Mark Johnson (a younger, Caucasian employee also at Store 534) who performed similar tasks but who continued to hold the position of Store Director (eligible for bonuses) while Duckens was reduced to a Manager (ineligible for bonuses). *See* Document No. 28 ex. A, at 76, 79-89. *See* Keelan v. Majesco Software, Inc., -- F.3d --, 2005 WL 834481, at *11 (5th Cir. Apr. 12, 2005).

Even if Duckens can establish a prima facie case, Brake Check argues, it has produced legitimate, non-discriminatory reasons for its actions. According to Brake Check, the change in Duckens's

---

[4] Brake Check argues that even if it had kept Duckens as a Store Director, he would not in fact have earned any percentage bonuses because the Stores at which he worked never attained the requisite level of income. *See* Document No. 28 ex. C ¶ 15. There is no summary judgment evidence, however, that Brake Check knew in advance at the time it downgraded Duckens's position that the store would not become profitable and that Duckens could not have earned bonuses. If the evidence on the unprofitability of the store is as Brake Check contends, then Duckens may have difficulty in proving that he suffered other than nominal damages.

9

status from Store Director to Manager was necessary for Brake Check to keep paying him $500 per week, because supplemental pay plans for Store Directors do not last for more than six months. *See* id. ex. C. ¶ 16; Document No. 37 ¶¶ 2-3. Rather than force Duckens to work on the incentive-based pay of a Store Director (with the $370 base), Brake Check contends, management gave special permission for Brake Check to pay Duckens $500 per week as a Manager. *See* id.

"[A] plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" Laxton v. Gap, Inc., 333 F.3d 572, 578 (5th Cir. 2003)(quoting Reeves, 120 S. Ct. at 2106). Duckens's summary judgment evidence is sufficient to raise a genuine issue of material fact on whether Brake Check's explanation is worthy of credence. For example, Duckens testified that he was never told by management that he was no longer a store director. In fact, both he and Mark Johnson simultaneously wore pins identifying themselves as Store Directors although Duckens was not told that he had been removed from that position. Moreover, while Duckens was at Store 534, William Duke held the position of Manager. *See* Document No. 28 ex. A, at 79-88. Duckens further testified that his pay stubs identified him as a Store Director, and that he had not seen the form changing his status from Store Director to Manager until that form was shown to him during his deposition. Id. Thus, Brake Check is not entitled to summary

judgment on Duckens's race and age discrimination claims under Title VII, § 1981, the ADEA, and TCHRA. *Cf.* Laxton, 333 F.3d at 578 ("Evidence demonstrating that the employer's explanation is false or unworthy of credence, taken together with the plaintiff's prima facie case, is likely to support an inference of discrimination even without further evidence of defendant's true motive.").[5]

2. Retaliation

Although Duckens alleges in his Complaint that he was denied bonuses in retaliation for complaining about disparate treatment, he does not attempt to defend his retaliation claims on summary judgment, much less establish the requisite prima facie case.[6] Accordingly, Brake Check is entitled to summary judgment on Duckens's retaliation claims.[7]

---

[5] Duckens points to racial epithets allegedly made by one Monty Jones as additional evidence of discrimination. These alleged comments relate only to Duckens's termination, which is not at issue in the instant case.

[6] To make prima facie case of retaliation, plaintiff must show that: (1) he engaged in a protected activity; (2) he was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *See* Davis v. Dallas Area Rapid Transit, 383 F.3d 309, 319 (5th Cir. 2004)(Title VII, § 1981); Hernandez v. Crawford Bldg. Material Co., 321 F.3d 528, 531 n.1 (5th Cir. 2003)(ADEA); Pineda v. United Parcel Serv., Inc., 360 F.3d 483, 487 n.2 (5th Cir. 2004)(TCHRA).

[7] Similarly, Duckens offers no elaboration upon or defense of the claims he purports to assert under the Fourteenth Amendment. Nor is there any showing that state action caused Duckens's alleged injury. *See* Bass v. Parkwood Hosp., 180 F.3d 234, 241 (5th Cir.

B.   <u>Negligent Hiring, Training, Supervision, and Retention</u>

Under Texas law, negligent hiring, training, supervision, and retention claims are viable only if the employer's employee commits an underlying actionable tort.  *See* <u>Harris-Childs v. Medco Health Solutions, Inc.</u>, No. CIV.A. 4:03-CV-77-Y, 2005 WL 562720, at *7 (N.D. Tex. Mar. 10, 2005); <u>Gonzales v. Willis</u>, 995 S.W.2d 729, 739 (Tex. App.--San Antonio 1999); <u>Verhelst v. Michael D's Restaurant San Antonio, Inc.</u>, 154 F. Supp. 2d 959, 968 (W.D. Tex. 2001)(same). Duckens contends that Brake Check "knew or should have known of Mr. [Monty] Jones' discriminatory animus towards Hispanics and African Americans, especially Plaintiff."  Document No. 33 ¶ 25. However, Duckens neither shows nor argues that Jones committed an actionable tort against Duckens, and his negligent hiring, training, supervision, and retention claims cannot rest solely upon his statutory discrimination claims.  *See* <u>Gonzalez</u>, 995 S.W.2d at 739-40.  Brake Check is therefore entitled to summary judgment on these state law claims as well.

## IV.   <u>Order</u>

For the reasons set forth, it is hereby

ORDERED that Defendant Brake Check, Inc.'s Motion for Summary Judgment (Document No. 28) is GRANTED IN PART as follows: Plaintiff

---

1999).  Thus, Brake Check is also entitled to summary judgment on Duckens's Fourteenth Amendment claims.

Dorceal Duckens's retaliation claims, claims asserted pursuant to the Fourteenth Amendment of the United States Constitution, and state law claims for negligent hiring, training, supervision, and retention are DISMISSED with prejudice.  Defendant Brake Check, Inc.'s Motion for Summary Judgment is otherwise DENIED, and Plaintiff's race and age discrimination claims under Title VII, § 1981, the ADEA, and TCHRA remain for trial.

The Clerk will enter this Order and send copies to all counsel of record.

SIGNED at Houston, Texas on this 8th day of June, 2005.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE